Filed 7/26/22  Trebas v. Ahlin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DANIEL TREBAS, | C094810 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00256877-CU-MC-GDS) |
| v. | |
| PAMELA AHLIN et al., | |
| Defendants and Respondents. | |

Plaintiff Daniel Trebas was involuntarily committed and repeatedly had his commitment extended, and was thus confined in state hospitals from 2004 into 2017. During this time, he repeatedly, unsuccessfully, challenged his recommitment, opposing petitions for extension of his commitment and filing petitions for writs of habeas corpus, advancing several grounds to support his claims that his ongoing commitment was improper.  After his eventual release, plaintiff filed this action against defendants State Department of State Hospitals and several officers to recover damages for injuries that

1

arose during his years of allegedly improper commitment. Defendants moved for judgment on the pleadings. In connection with their motion, defendants requested judicial notice of, among other things, court records from the proceedings in which plaintiff opposed recommitment petitions and from his habeas corpus proceedings and the pleadings in those proceedings. Plaintiff opposed defendants' request for judicial notice and filed a request for judicial notice of his own. The trial court granted defendants' request for judicial notice and granted in part and denied in part plaintiff's request for judicial notice. The court granted defendants' motion for judgment on the pleadings, concluding the entirety of this action is premised on the "foundational claim that Plaintiff's commitment was improper," and that, based on the prior proceedings, the doctrine of collateral estoppel barred relitigation of that issue.

Plaintiff, in propria persona, appeals, asserting the trial erred in (1) granting defendants' request for judicial notice, (2) denying his request for judicial notice of plaintiff's exhibit H, (3) failing to follow applicable authority in its application of the doctrine of collateral estoppel with regard to his cause of action for conspiracy to commit fraud, (4) failing to appreciate the effect of defendants' "stipulations," (5) concluding that collateral estoppel applied to his claims which were based on defendants' failure to pay proper wages, and (6) granting defendants' motion for judgment on the pleadings without leave to amend.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *First Amended Complaint*

Plaintiff was involuntarily committed and confined at Atascadero State Hospital and Coalinga State Hospital from August 28, 2004, through March 17, 2017. According to plaintiff, as of October 2005 or thereabouts, his diagnosed schizoaffective disorder, the legal basis for his confinement, was documented as being in remission, triggering the

2

mandatory provisions of Penal Code[1] section 2968.[2] Plaintiff asserted defendants repeatedly failed to take required action to inspect state hospitals or otherwise ensure defendants and their agents would comply with the provisions of section 2968, which, he asserted, required the discontinuation of his treatment and his release from confinement. He asserted defendants failed to ensure their agents complied with mandatory standards calling for the release of committed persons once the basis for their confinement no longer existed. Plaintiff also asserted defendants' agent relied on an improper criterion in continuing his confinement, specifically a different mental disorder than that used to satisfy the initial commitment criteria. Plaintiff further asserted defendants failed to take action to ensure patients would be provided continuity of care when transferred between state hospitals. Additionally, plaintiff asserted defendants neglected their duty to ensure persons who provided labor for the economic benefit of state hospitals were paid minimum wages, including back wages due. In the operative first amended complaint, plaintiff asserted causes of action to recover damages for negligence, false imprisonment, financial dependent adult abuse, violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) and the Tom Bane Civil Rights Act (Civ. Code, § 52.1), human trafficking, and conspiracy to commit fraud. He sought compensatory and punitive damages.

### *Defendants' Motion for Judgment on the Pleadings and Request for Judicial Notice*

Defendants filed a motion for judgment on the pleadings on the ground, among others, that the entire action was barred by the doctrine of collateral estoppel. Defendants asserted plaintiff was precluded from relitigating court orders that continued his

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Section 2968 provides: "If the prisoner's severe mental health disorder is put into remission during the parole period, and can be kept in remission, the Director of State Hospitals shall notify the Board of Parole Hearings and the State Department of State Hospitals shall discontinue treating the parolee."

involuntary commitment. Defendants asserted that plaintiff in prior proceedings previously raised and litigated the same issues as raised in this action. According to defendants, plaintiff attacked his involuntary commitment by filing five habeas corpus petitions between 2009 and 2016, requesting his immediate release pursuant to section 2968 on the ground that his mental disorder was in remission. However, the Court of Appeal denied each petition, the Supreme Court denied review, plaintiff did not appeal from the relevant orders, and they were thus final judgments.

Defendants further asserted plaintiff filed numerous motions in the trial court seeking dismissal of petitions to extend his commitment and seeking his immediate release pursuant to section 2968. Plaintiff also argued his commitment could not properly be extended based on a mental disorder different from that supporting his initial commitment. According to defendants, the trial court rejected plaintiff's arguments and ordered plaintiff recommitted in 2013 and 2015. Plaintiff appealed, but, on his appeals, he did not raise, and thus waived, the issue of section 2968. Defendants asserted that plaintiff abandoned each appeal.

Defendants asserted that, although in this action plaintiff seeks civil remedies, the doctrine of collateral estoppel prevented him from relitigating issues adjudicated in his recommitment proceedings and habeas corpus petitions. According to defendants, plaintiff "cannot seek redress for the same alleged injury – improper involuntary commitment – based on the same previously litigated issues." Defendants continued: "In his commitment proceedings and habeas petitions, [plaintiff] argued that . . . section 2968 required [the State Department of State Hospitals] to arrange for his immediate release; that overlapping [commitment extension] petitions were improper; and that his commitments could not be extended based on a diagnosis different than his initial commitment. The trial courts consistently disagreed with him and ordered his recommitment. The appellate courts denied his habeas petitions on five occasions as there were no grounds for releasing him. [Plaintiff] cannot now seek monetary

4

compensation for the same injury based on the same theories after the courts rejected his arguments. Such an award would undermine the numerous trial court and appellate court orders upholding his commitment, and result in inconsistent judgments – precisely the type of consequence that collateral estoppel was designed to avoid."

In support of their motion, defendants requested judicial notice of a number of items, including trial court and Court of Appeal orders, plaintiff's petitions for writs of habeas corpus, petitions for extension of plaintiff's commitment, plaintiff's motions to dismiss those petitions, related hearing transcripts and briefs, a government tort claim filed by plaintiff, and a complaint and dismissal in a prior civil action. Defendants asserted that, under Evidence Code section 452, subdivision (d), the trial court could take judicial notice of the records of any court of this state. Defendants further asserted that, under Evidence Code section 453, where a party requests judicial notice of any matter specified in Evidence Code section 452 and provides notice to the adverse party, judicial notice is compulsory.

### Plaintiff's Request for Judicial Notice

Plaintiff opposed defendants' motion for judgment on the pleadings, opposed their request for judicial notice, and filed his own request for judicial notice. Among other things, plaintiff sought judicial notice of exhibit H, a ruling of the Sacramento County Superior Court granting the petitioner Victor Laramore's petition for a writ of habeas corpus.

### Tentative Ruling

In a tentative ruling, the trial court granted defendants' request for judicial notice. The court noted the documents that were the subject of defendants' request for judicial notice were primarily court records subject to judicial notice pursuant to Evidence Code section 452, subdivision (d). The trial court stated that it had taken judicial notice of these documents as showing what issues plaintiff raised in prior proceedings, what issues the courts addressed, and the courts' rulings. The court further stated that, contrary to

5

plaintiff's contention, the documents did not contain disputed factual issues not properly the subject of judicial notice.

The trial court granted in part and denied in part plaintiff's request for judicial notice. In denying part of plaintiff's request, the court noted: "Defendants' discovery responses are not Court records that are subject to judicial notice. . . . In any event even if the Court took judicial notice of all the documents requested by Plaintiff, it would not affect the ruling . . . ."

The trial court granted defendants' motion for judgment on the pleadings. After reviewing the documents that were the subject of defendants' request for judicial notice, and plaintiff's history of unsuccessful challenges in the courts to his involuntary commitment, the trial court concluded: "[T]he issues present in the underlying commitment trials, appeals and various habeas petitions are identical to the issues present in the instant action. Specifically, the instant action is premised on the foundational claim that Plaintiff's commitment was improper. Indeed, Plaintiff alleges that Defendants failed to comply with . . . [section] [2968] based on the claim that the remission of his mental disorder required him to be immediately release[d], that he was improperly re-committed based on a mental disorder that was different from the disorder supporting his initial commitment and that he was improperly committed without a court order while the District Attorney's consolidated recommitment proceedings were pending." The court stated that these matters had been resolved against plaintiff numerous times through motions, trials, habeas corpus petitions, and appeals. The court also noted that, while plaintiff raised his contention pursuant to section 2968 in the trial courts, he did not do so on his prior appeals from trial court decisions. However, he could have raised the issue, and, by failing to do so, he waived it.

The trial court granted defendants' motion for judgment on the pleadings without leave to amend. The court concluded there was "no amendment which could overcome the collateral estoppel defect."

6

### *Oral Argument Before the Trial Court*

In oral argument before the trial court following issuance of the tentative ruling, plaintiff asserted defendants had "erroneously argued that everything having to do with the defendant[s'] questionable compliance with . . . [section] 2968 was already previously decided in various court proceedings having to do with those recommitment orders." With regard to the documents that were the subject of defendants' request for judicial notice, plaintiff asserted defendants failed to follow the required procedures, defendants failed to ask the court to take judicial notice of specific facts within those documents, and even if the court properly granted defendants' request for judicial notice, the documents did not compel a result in their favor based on the nature of the underlying allegations, specifically as to plaintiff's claim of conspiracy to commit fraud.

Second, plaintiff asserted the trial court erred in denying his request for judicial notice of plaintiff's exhibit H.

Third, plaintiff asserted defendants had made various "stipulations" in their memorandum in support of their motion for judgment on the pleadings, including that their failure to release plaintiff in 2005, 2007, 2008, and 2013 caused him injury. Plaintiff further asserted the injuries he suffered as a result of defendants' failures to comply with section 2968 could not have been addressed or remedied in prior proceedings because he had not previously sought compensation for those injuries which defendants "stipulated" he had suffered.

Fourth, plaintiff noted the tentative ruling did not address his specific claim concerning the improper withholding of wages, which was alleged in several of his causes of action.

Fifth, plaintiff asserted that, assuming the first amended complaint was amended to eliminate all references to defendants' acts and omissions in prior recommitment proceedings, "there would still be sufficient elements of alleged facts needed to support each and every cause of action."

7

Defendants submitted on their papers.

### *The Order and Judgment Appealed From*

The trial court affirmed its tentative ruling. In a written order and judgment of dismissal, the trial court granted defendants' request for judicial notice and granted their motion for judgment on the pleadings without leave to amend. The court stated that the "entire action is barred by the doctrine of collateral estoppel because plaintiff is seeking to re-litigate the numerous court orders that continued his involuntary commitment." The court dismissed the first amended complaint with prejudice and entered judgment in defendants' favor.

## DISCUSSION

## I

### *Defendants' Request for Judicial Notice*

Plaintiff asserts the trial court improperly granted defendants' request for judicial notice. Plaintiff asserts defendants' request did not comply with the requirements set forth in California Rules of Court, rule 3.1113(k),[3] and defendants failed to provide quotes that would support their position. Plaintiff also asserts the material to be judicially noticed did not contain that which defendants claimed it did, rendering the items subject to factual dispute. We conclude plaintiff has not established the trial court abused its discretion in granting defendants' request for judicial notice.

---

[3] Plaintiff's brief erroneously refers to California Rules of Court, rule 3.113, which does not exist, rather than rule 3.1113.

Defendants assert plaintiff forfeited this contention by failing to assert it in his papers before the trial court. However, plaintiff arguably raised the issue in his papers and did raise it in argument before the trial court. We conclude plaintiff did not forfeit the issue and address it on its merits.

### A. Requests for Judicial Notice Generally

Under Evidence Code section 451, judicial notice shall be taken of, among other things, the "decisional, constitutional, and public statutory law of this state . . . ." (Evid. Code, § 451, subd. (a).) Under Evidence Code section 452, judicial notice may be taken of records of any court of this state. (Evid. Code, § 452, subd. (d).) " 'This includes any orders, findings of facts and conclusions of law, and judgments within court records. [Citations.] However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.' " (*In re Vicks* (2013) 56 Cal.4th 274, 314, quoting *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) "We review judicial notice rulings for abuse of discretion." (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182.)

### B. Failure to Comply with California Rules of Court

California Rules of Court, rule 3.1113(k), on which plaintiff relies, provides: "All references to exhibits or declarations in supporting or opposing papers must reference the number or letter of the exhibit, the specific page, and, if applicable, the paragraph or line number." Plaintiff does not refer us to any appellate case, nor have we found any in our research, in which it was determined that a trial court abused its discretion in granting a request for judicial notice based on a failure to comply with California Rules of Court, rule 3.1113(k). Nor could we conclude plaintiff here suffered any appreciable prejudice as a result of any failure by defendants to properly reference documents in compliance with the rule. Plaintiff's contention that the trial court's determination to grant defendants' request for judicial notice constituted prejudicial error on this ground is without merit.

As plaintiff emphasizes, before the trial court, he asserted that "[o]ther courts have determined that these same types of omissions and errors" in failing to include page and

line numbers "were grounds for not granting judicial notice." In support of this contention, he referred to *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548 (*Sosinsky*), as he does on appeal, although without analysis or citation to a particular page or passage from that case. *Sosinsky* presented the issue of whether, in considering a summary judgment motion under Code of Civil Procedure section 437c, "a court may properly take judicial notice of the truth of factual findings made by a judge who sat as a trier of fact in a previous case." (*Sosinsky,* at p. 1551.) However, relevant to plaintiff's particular contention, the court in *Sosinsky* stated that the appellants' "failure to expressly request the court to take judicial notice of any particularly identified 'fact' or 'facts,' and their failure to particularly identify, in their Code of Civil Procedure section 437c, subdivision (b) response, any particular factual finding by the trial judge in [the previous case] which they wanted the superior court to take judicial notice of the truth of, are two omissions which by themselves might, in this case, possibly justify the granting of the [respondents'] summary judgment motion." (*Id.* at p. 1563, fn. omitted.) However, *Sosinsky* did not hold that the appellants' failures in this regard warranted granting the respondents' summary judgment motion. Instead, the court determined that "judicial notice could not properly be taken of the truth of the factual findings of the trial judge in [the previous] case . . . ." (*Ibid.*) *Sosinsky* does not stand for the proposition that failure to include page and line numbers in reference to exhibits in compliance with California Rules of Court, rule 8.1113(k) necessarily warrants the denial of a request for judicial notice. Under the circumstances of this case, we conclude the trial court did not abuse its discretion in granting defendants' request for judicial notice notwithstanding any failure to comply with that rule.

Nor did the court abuse its discretion based on defendants' failure to provide quotes, a claim of error for which plaintiff offers neither analysis nor authority. (See generally *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 ["It is the appellant's burden to demonstrate the existence of reversible error."]; *In re S.C.* (2006)

10

138 Cal.App.4th 396, 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "].)

### C. Contested Matters Subject to Factual Dispute

Plaintiff asserts defendants' request for judicial notice involved documents, the contents of which were subject to factual dispute. The truth or falsity of the facts at issue in the prior proceedings was not at issue or considered by the trial court. Rather, the trial court took judicial notice of the subject documents to determine what issues were raised, addressed, and ruled upon in the prior proceedings for purposes of determining whether collateral estoppel potentially applied. (See, e.g., *Barker v. Hull* (1987) 191 Cal.App.3d 221, 227 ["the trial court had sufficient undisputed facts before it, which were appropriate subjects of judicial notice, to support the conclusion that the issues involved were identical and that Barker fully presented the issue in the prior case, was given the opportunity to obtain all available evidence, and that the issue was, therefore, actually litigated and determined in the prior action"].)

Insofar as plaintiff's contention is that what was actually raised, litigated, and decided in those prior proceedings was factually disputed, we cannot agree. Plaintiff in his briefing seems to primarily assert that in one of the prior proceedings, on August 22, 2013, memorialized in exhibit K, the trial court did not actually make a determination on his contention that he was entitled to immediate release pursuant to section 2968. Thus, whether such a determination was made, as asserted by defendants, was a contested matter before the trial court. Plaintiff's contention is without merit. In the August 22, 2013, proceeding, plaintiff raised his contention that he was entitled to immediate release pursuant to section 2968, and, following a lengthy discussion, the court stated, "I'm not ordering immediate release." In any event, even if that court did not make a

11

determination on plaintiff's contentions concerning section 2968, any abuse of discretion in considering exhibit K for the purpose of concluding the issue revolving around that section was actually litigated and necessarily decided by the court was harmless under any standard. Even if we were to assume the issue involving section 2968 was not actually decided in that proceeding on that date, the issue was clearly raised and decided in any number of other proceedings.

## II

### *Plaintiff's Request for Judicial Notice*

Plaintiff asserts the trial court improperly denied his request for judicial notice of plaintiff's exhibit H. Defendants respond that plaintiff's argument is "unavailing" because the trial court expressly concluded that, even if it considered plaintiff's materials, this would not change its determination.

Plaintiff's exhibit H was an April 2009 Sacramento County Superior Court ruling on petitioner Victor Laramore's petition for a writ of habeas corpus. An order to show cause issued in that matter directed the parties to brief the following issue: "Does equal protection require that petitioner receive the same protections under . . . [section] 2968 as are received by [mentally disordered offenders] still on parole, and if so, does that entitle petitioner to an order requiring the Department of Mental Health to immediately cease treatment of him and to release him forthwith?" The court granted the petition, concluding that equal protection required that section 2968 apply even when a mentally disordered offender is no longer on parole and that the petitioner was therefore entitled to immediate release pursuant to section 2968, although the court stayed the effect of its order to afford the respondents the opportunity to obtain a stay from a reviewing court.

Whether or not the trial court properly denied plaintiff's request for judicial notice of exhibit H, plaintiff suffered no prejudice as a result. As we discuss in part III of the Discussion, the trial court determined plaintiff's entire action was barred by the doctrine of collateral estoppel. In part, the court determined plaintiff had previously, repeatedly,

12

raised his claim that, pursuant to section 2968, he had been entitled to immediate release from involuntary confinement in the state hospital. Finding the claim that plaintiff's commitment was improper to be a "foundational claim" to this action, the trial court determined this action was barred by collateral estoppel. The Sacramento Superior Court's 2009 application of section 2968 in a writ proceeding involving another individual is wholly irrelevant to, and could not affect, the trial court's determination here that collateral estoppel barred plaintiff's complaint. The trial court was concerned with whether the issue of section 2968 had previously been raised and decided, not the proper application of that section. Accordingly, whether or not the court abused its discretion in denying plaintiff's request for judicial notice of plaintiff's exhibit H, plaintiff suffered no prejudice as a result.

Plaintiff asserts that the trial court also improperly denied his request for judicial notice of defendants' discovery responses. As plaintiff raises this contention for the first time in his reply brief, we will not consider it. " ' "Obvious considerations of fairness in argument demand that the appellant present all . . . points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [the] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; accord, *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

### III

### *Collateral Estoppel and the Conspiracy to Commit Fraud Cause of Action*

Plaintiff asserts the trial court prejudicially erred in failing "to follow legal authorities regarding collateral estoppal [*sic*] not applying to new claims of fraud." Plaintiff asserts that the authority on which he relied in the trial court and on which he

13

relies on appeal "clearly show[s] that [his] cause of action for conspiracy to commit fraud was a distinct and separate issue that did not fall under the collateral estoppel grounds for dismissal."

### A. Standard of Review and the Doctrine of Collateral Estoppel

"Since a motion for judgment on the pleadings (formerly nonstatutory, now codified at Code Civ. Proc., § 438) is the equivalent of a demurrer with the same purpose and effect, the same rules apply." (*Davis v. Ross* (2019) 39 Cal.App.5th 627, 629.) A demurrer tests the sufficiency of the complaint as a matter of law, and it raises only questions of law. (Code Civ. Proc., § 589, subd. (a).) "We review a trial court's decision to sustain a demurrer for an abuse of discretion." (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251-1252; accord, *Davis v. Ross*, at p. 629 [same rules apply on motion for judgment on the pleadings].) "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case." (*Samara v. Matar* (2018) 5 Cal. 5th 322, 326.) "We now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel.' [Citations.]"[4] (*Ibid.*, fn. omitted.) "Issue

---

**4** Here we use the term "collateral estoppel" as that is the term employed by the parties and the trial court throughout these proceedings.

preclusion . . . prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. [Citation.] It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' " (*Id*. at p. 327.)

## B. The Conspiracy to Commit Fraud Cause of Action

In the seventh cause of action, to recover damages for conspiracy to commit fraud, plaintiff asserted that, between August 2004 and March 2017, defendants conspired to commit fraud by concealing the fact that plaintiff and other patients at Atascadero State Hospital who were confined "under the same commitment scheme" were paid significantly less in hourly wages compared to other similarly situated individuals at other hospitals, resulting in lost wages. He further alleged that, during the same time frame, defendants conspired to commit fraud based on their failure to comply with the mandatory provisions of section 2968 and conceal their noncompliance. Lastly, plaintiff asserted that, again during the same time frame, defendants conspired to commit fraud in their policies and procedures involved in transferring patients between state hospitals which, in plaintiff's case, resulted in "prolonged unjust confinement and lack of continuity of treatment (which continuity of treatment would have shown that treatment had been completed and release was overdue)."

## C. Analysis

We agree, as a general matter, with the trial court's conclusion that the "instant action is premised on the foundational claim that Plaintiff's commitment was improper." Specifically with regard to the conspiracy to commit fraud cause of action, the claim addressing section 2968 clearly depended on his foundational claim that he was wrongly confined and that defendants acted improperly in refusing to release him as he asserted was required under section 2968. His claim addressed to his transfer between hospitals also depended on the foundational claim that his confinement was improper. As stated,

15

the alleged harm resulting from the transfer included "prolonged *unjust confinement* and lack of continuity of treatment (which continuity of treatment would have shown that *treatment had been completed and release was overdue*)." (Italics added.) Plaintiff's wage claim too was dependent upon the foundational claim that he was wrongfully confined at all relevant times. In the seventh cause of action, plaintiff expressly incorporated all prior paragraphs of the complaint. Among other things, those prior paragraphs repeatedly alleged defendants violated plaintiff's rights and committed a variety of torts based on his repeated recommitment and defendants' failure to ensure his release, which he asserted was required, including under section 2968. Specifically relevant to the wage claim, the complaint described submitting a claim pursuant to Government Code section 905, alleging, among other things, that defendants refused "to provide legally required minimum-wage compensation, including back-pay reimbursements, for work Plaintiff performed for a state hospital while Plaintiff was not subject to punitive conditions of confinement or criminal liabilities, nor otherwise legally detained (as specified, in part, under . . . [section] 2968 and constitutional provisions . . . ." He also alleged, in the third cause of action based on financial dependent adult abuse, similar minimum wage and back wages allegations, and asserted that, at the relevant times, he was "not serving any prison sentence nor parole term, nor was otherwise under any court-ordered confinement." In the fifth cause of action, based on human trafficking, plaintiff asserted he was forced to work while not being paid minimum wages as a result of being involuntarily confined through abuse of the legal process. The same cause of action alleged plaintiff was subjected to forced service as a result of being confined at the state hospitals after he demonstrated he was entitled to release. We conclude plaintiff's wage claim, too, was premised on his foundational claim that he was improperly confined. However, the issue of plaintiff's alleged improper and unjust confinement had been litigated repeatedly in the prior recommitment trials,

16

appeals, and habeas corpus proceedings. We now turn to the specific claims of error plaintiff raises in asserting the trial court failed to follow applicable authority.

In asserting the trial court failed to follow applicable legal authority on the issue of collateral estoppel not applying to his conspiracy to commit fraud claim, plaintiff relies on *Flores v. Arroyo* (1961) 56 Cal.2d 492 (*Flores*), and *Corral v. State Farm Mutual Auto. Ins. Co.* (1976) 92 Cal.App.3d 1004 (*Corral*). Plaintiff asserts these "authorities clearly show that the plaintiff's cause of action for conspiracy to commit fraud was a distinct and separate issue that did not fall under the collateral estoppel grounds for dismissal."

Addressing whether plaintiff's reliance on *Flores* is warranted requires a detailed explanation of the circumstances of that case. In *Flores*, the plaintiff, who was nonparty Frank Flores's first wife, sued the defendant, who was Flores's second wife. (*Flores, supra*, 56 Cal.2d at p. 494.) After the plaintiff and Flores separated but before the plaintiff filed for divorce, Flores purchased certain real property with community property funds and placed the property in the defendant's name. (*Ibid*.) After the plaintiff filed for divorce, she and Flores entered into a property settlement agreement, but the real property at issue was not disclosed in that agreement. (*Ibid*.) Subsequently, a final decree of divorce was entered in the divorce between the plaintiff and Flores, after which Flores married the defendant. (*Ibid*.) When the defendant and Flores subsequently divorced, that judgment of divorce "quieted the title of defendant, as against . . . Flores, to the real property." (*Ibid*.) The plaintiff filed an action against the defendant seeking a trust to the real property and an accounting. (*Ibid*.) The defendant demurred, relying on, among other things, res judicata based on the plaintiff's divorce from Flores and on her own divorce from Flores, and the trial court sustained the demurrer after taking judicial notice of the judgments in both divorce actions. (*Ibid*.)

The Supreme Court reversed. (*Flores, supra*, 56 Cal.2d at p. 497.) First, in considering whether the complaint stated a cause of action, the Supreme Court noted the

17

allegations, among others, that, while the plaintiff and Flores were still married, Flores and the defendant conceived of a scheme to purchase the real property with community property and take it in the defendant's name to fraudulently conceal it from the plaintiff; that, in the plaintiff's divorce action against Flores, Flores, at the defendant's urging, represented that the property settlement agreement set forth all of the community property owned by Flores and the plaintiff; that the subject real property was not in the property settlement agreement; that the plaintiff relied on Flores's representations; that the " 'plaintiff was thereby prevented from litigating the question of her rights in and to said . . . real property' "; and that " 'by reason of the fraud and concealment of defendant and . . . Flores . . . plaintiff agreed to the said property settlement agreement and the same was submitted to the Court and made a part of the decree in said divorce action.' " (*Id.* at pp. 495-496.) As for whether the complaint stated a cause of action, the Supreme Court concluded, "it is clear that a cause of action for extrinsic fraud was alleged by plaintiff against defendant and that the action was not barred by plaintiff's judgment of divorce from . . . Flores." (*Id.* at p. 496.) The Supreme Court further concluded the trial court properly took judicial notice of the judgment of divorce between the defendant and Flores. (*Id.* at pp. 496-497.) Finally, the Supreme Court concluded: "In the present case the complaint alleges extrinsic fraud committed by defendant and . . . Flores in depriving plaintiff of her interest in the property involved. These allegations are sufficient to constitute defendant an involuntary trustee for the benefit of plaintiff under the terms of section 2224 of the Civil Code, there being no showing of another and better right thereto in defendant. Under the circumstances, *the judgment in defendant's divorce action quieting her title to the property as against . . . Flores, the other alleged defrauding party, can be regarded only as a step in the execution of the alleged plan and hence no bar to the present action*." (*Id.* at p. 497, italics added.)

Plaintiff relies on *Flores* for the proposition that "even if judicial notice of prior court records is granted for what could otherwise be a dismissal based on collateral

18

estoppel, when the complaint also alleges a conspiracy to commit fraud the prior court records become, if anything, non-dispositive elements within the alleged conspiracy, and are not grounds for dismissal based on collateral estoppel." He emphasizes the language from *Flores* italicized *ante*.

*Flores* does not stand for the proposition that, wherever collateral estoppel may otherwise apply, it does not apply to a claim alleging a conspiracy to commit fraud merely based on the nature of such a claim. In *Flores*, the defendant's judgment of divorce from Flores, quieting her title to the property as against Flores, could not have preclusive effect on the plaintiff's claims against the defendant because the plaintiff was not a party to the action, or in privity with a party thereto, and she had no opportunity to address the issues raised therein. (See *Samara v. Matar, supra*, 5 Cal. 5th at p. 327.) Nor was the issue that was raised in the plaintiff's action against the defendant—the defendant's role in the fraudulent use of the plaintiff's and Flores's community property to purchase real property and then conceal it from the plaintiff in the defendant's name, or, in more simple terms, the plaintiff's rights in the subject real property—identical to an issue actually litigated and necessarily decided in either divorce action. (See *ibid*.) The circumstances in *Flores* are entirely unlike those at issue here. Under the circumstances of this case, we agree with the trial court that collateral estoppel applies, and plaintiff's cause of action based on conspiracy to commit fraud is not insulated from that preclusive effect. *Flores* provides no support for plaintiff's contentions.

Plaintiff relies on *Corral, supra*, 92 Cal.App.3d 1004, for the proposition that a subsequent action raising new issues of alleged fraud should not be barred by collateral estoppel. In *Corral*, in the language on which plaintiff relies, the court, discussing collateral estoppel, stated: "The determinative question is whether there is an identity of the causes of action and issues involved in the arbitration proceeding and the bad faith action. Manifestly there is not." (*Id*. at p. 1011.) Not included in plaintiff's argument is the court's recitation of the issues raised in the two actions, which we need not reproduce

19

here, and its conclusion as to collateral estoppel that "[a] mere recitation of the issues encompassed within the two proceedings makes clear that they are not the same . . . and that collateral estoppel will not preclude the bad faith action" based on the arbitration proceeding. (*Id*. at p. 1012, fn. omitted.)

Here, we have concluded that collateral estoppel bars plaintiff's action, including the cause of action premised on conspiracy to commit fraud, because the foundational issue of plaintiff's alleged improper confinement has repeatedly been litigated and decided against him in prior proceedings. Nothing in *Corral* undermines that conclusion.

We do not agree with plaintiff that these two authorities demonstrate that his cause of action for conspiracy to commit fraud "was a distinct and separate issue that did not fall under the collateral estoppel grounds for dismissal."[5]

## IV

### *Effect of Defendants' "Stipulations"*

Plaintiff asserts that the trial court "prejudicially ignored how defendants' stipulation to plaintiff's injuries negated defendants' claim that collateral estoppal [*sic*] called for dismissal." For this proposition, plaintiff relies on language from defendants' memorandum of points and authorities in support of their motion for judgment on the pleadings. In the portion cited, summarizing plaintiff's allegations for the purpose of

---

[5] Plaintiff's contention, in his reply brief, that his allegations of conduct occurring in 2020 demonstrate that the conspiracy to commit fraud cause of action cannot be the subject of collateral estoppel based on rulings addressing matters extending only into 2017 is without merit. Plaintiff's allegation that, in discovery responses in February 2020, defendants "furthered the conspiracy" in completing interrogatories does not undermine the conclusion that the conspiracy as alleged was dependent upon, among other things, the allegations that plaintiff was wrongfully confined, and that foundational element was properly the subject of collateral estoppel. Plaintiff's contention that the allegation that defendants failed to comply with the mandatory provisions of section 2968 as late as 2019 fares no better, as it even more directly raises an issue that had been decided against plaintiff repeatedly in prior proceedings.

20

asserting that plaintiff did not timely file a government claim and therefore his claims were barred, defendants referred to when plaintiff's "injury began" as the result of a particular doctor's alleged "fail[ure] to release" plaintiff from commitment, and which failure was repeated over several years. Relying on this language, plaintiff asserted in the trial court, and maintains on appeal, that defendants "acknowledged that the plaintiff had suffered injuries on numerous occasions."

Defendants' statements are not stipulations or admissions. Defendants were merely setting forth plaintiff's allegations in asserting that plaintiff failed to timely file his claim under the Government Claims Act. These statements did not have the effect of stipulating that plaintiff had indeed suffered any injury or that defendants or their agents improperly failed to release him, and plaintiff's argument to the contrary is without merit.

Plaintiff also asserts defendants did not contest his claim that they each could be held liable for his injuries. In the first amended complaint, plaintiff made allegations as to each defendant consistent with or similar to the following: "Plaintiff is informed, believes, and thereon also claims that Defendant Department of State Hospitals may be held liable for the actions and/or omissions of the other named Defendants being, in part, as Defendant Department of State Hospitals was, at all times relevant to the claims presented herein, a co-fiduciary with and/or co-conspirator with the other Defendant(s) . . . ." In his declaration in opposition to defendants' motion for judgment on the pleadings, plaintiff asserted defendants failed to deny these allegations in their motion. Plaintiff further notes defendants did not deny these allegations in their reply or in oral argument before the trial court. Thus, plaintiff asserts defendants stipulated to or admitted these allegations.

In reviewing the granting of a motion for judgment on the pleadings, all " ' "properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law." ' " (*Travelers Property Casualty Co. of America v. Engel Insulation, Inc.* (2018) 29 Cal.App.5th 830, 834.) Even if taken as true, or even if

21

admitted by defendants, plaintiff's allegations would only establish that defendants *may* be held liable for actions or omissions of other defendants as cofiduciaries or coconspirators *in the event grounds for liability were established*. Any failure to deny these specific allegations did not constitute a blanket admission or stipulation to liability. Moreover, such statements would constitute conclusions of fact or law, which would not be deemed true in considering a motion for judgment on the pleadings. (*Ibid.*)

Plaintiff's characterizations of these matters as "defendants' stipulations by way of admissions," "admission of facts," and failure to contest matters of law are inaccurate and misleading. Contrary to plaintiff's contentions, the trial court did not fail to appreciate the significance of defendants' stipulations; defendants did not make any stipulations.

## V

### *Claims Alleging Failure to Pay Proper Wages Due*

Plaintiff asserts the trial court erred in dismissing causes of action to which the collateral estoppel rationale for dismissal was not applicable. Specifically, he asserts his claim based on defendants' failure to pay proper wages, which was asserted in several of his causes of action, was still viable notwithstanding the court's determination that collateral estoppel applied. Defendants respond that the trial court properly found that all allegations in the first amended complaint were premised on the foundational claim that plaintiff's commitment was improper.

We have addressed this contention in part III of the Discussion, in discussing the conspiracy to commit fraud cause of action. Based on our understanding of plaintiff's claims addressed to insufficient wages and back wages owed as set forth in his first amended complaint, they are thoroughly dependent upon the foundational claim that he was wrongfully confined at all relevant times. Those foundational claims are barred by collateral estoppel. Accordingly, the wage claims are as well.

22

# VI

## *Denial of Leave to Amend*

Plaintiff asserts the trial court abused its discretion in granting defendants' motion for judgment on the pleadings without leave to amend. He asserts he could amend the complaint to omit actions pertaining to recommitment proceedings and expand on how defendants were liable for breaching their administrative duties as separate and distinct from recommitment proceedings. However, he also goes on to state that these matters "could have been further explained by stating that on all of the occasions where the plaintiff had been injured by not being properly released in a timely manner, at various intervals of times thereafter [a named nonparty] (as co-fiduciary and co-conspirator with the defendants) acted to conceal those periods of injurious false imprisonment through his subsequent involvement in assertions that the plaintiff should continue to be involuntarily confined." Based on these statements, plaintiff has not satisfied his burden of proving amendment could overcome the collateral estoppel defect; that the allegations in the operative complaint are not based on the foundational claim that he was wrongfully confined.

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp., supra*, 4 Cal.5th at p. 162.) We agree with the trial court that the doctrine of collateral estoppel bars plaintiff's claims. We further agree with the trial court that there "is no amendment which could overcome the collateral estoppel defect." As such, the trial court properly granted defendants' motion for judgment on the pleadings without leave to amend.

23

## DISPOSITION

The order and judgment of dismissal is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
HOCH, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
RENNER, J.